**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**August 7, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

JOSE ROBERTO ZELIM-GOMEZ,

    Petitioner,

v.

MERRICK B. GARLAND,

    Respondent.

No. 23-9592
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

Jose Roberto Zelim-Gomez seeks review of a Board of Immigration Appeals (BIA) decision affirming an immigration judge's (IJ) denial of cancellation of removal. He also challenges the BIA's denial of his motion for administrative closure. Exercising jurisdiction under 8 U.S.C. § 1252(a)(2)(D), we deny the petition for review.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

I

Zelim-Gomez is a Mexican national who entered and was removed from the United States in 1999. He reentered that same year and has remained here since. In 2017, he was stopped for a traffic violation, after which the government charged him with being removable on two grounds, first, as an alien present in this country without having been admitted or paroled, 8 U.S.C. § 1182(a)(6)(A)(i), and second, as an alien who falsely represented himself as a United States citizen to obtain a benefit under the Immigration and Nationality Act (INA), *id.* § 1182(a)(6)(C)(ii)(I). Zelim-Gomez conceded the first charge, which an IJ sustained, but he denied the second, which the government pursued at his later merits hearing before a different IJ. In the interim, Zelim-Gomez applied for cancellation of removal, claiming his removal would result in exceptional and extremely unusual hardship for his United States citizen wife, who suffers from Type 1 diabetes.

At the merits hearing, the government prosecuted the second charge of removal by presenting Zelim-Gomez's Employment Eligibility Verification Form (I-9 Form), which falsely indicated he was a United States citizen. The government also presented a social security card bearing his name. Zelim-Gomez testified that the social security card was fake and that he signed the I-9 Form, which he used with the fake social security card to obtain employment in the United States. Based on this evidence, the IJ sustained the second charge of removal, finding clear and convincing evidence that Zelim-Gomez falsely represented himself as a United States citizen to obtain a benefit under the INA.

2

Regarding his application for cancellation of removal, Zelim-Gomez testified that his wife was diagnosed with Type 1 diabetes when she was 13 years old and she uses an insulin pump to regulate her blood glucose levels. He explained that he provides her health insurance through his employment, which enabled them to purchase a new $6,000.00 insulin pump that helped her better manage her glucose levels. He also testified that he attends her doctor and dietitian appointments and financially supports her so she does not need to work and can instead focus on her health. Additionally, he stated that he goes grocery shopping with her to help her choose healthy foods, and he helps her maintain her physical activity by going on morning walks with her. Despite these efforts, Zelim-Gomez's wife has had complications from her diabetes, including a miscarriage and hemorrhaging in her left eye. Still, Zelim-Gomez stated his wife is receiving good healthcare in the United States but she would not receive adequate care in Mexico. He indicated the Mexican healthcare system is saturated with patients, and he and his wife could potentially live four hours away from hospitals. He offered similar testimony from his wife and father-in-law. He also submitted documentary evidence reflecting his income and the quality of diabetes care in Mexico, among other things.

The IJ denied cancellation of removal and ordered Zelim-Gomez removed to Mexico. The IJ determined he failed to establish his removal would result in exceptional and extremely unusual hardship to his qualifying relative—his wife, who is a U.S. citizen. Although the IJ recognized removal would be difficult for them, the IJ explained that Zelim-Gomez has family in Mexico, he and his wife could live with

his parents, they could both work and earn money, and there was insufficient evidence that her medical condition would be significantly exacerbated if she moved to Mexico. On this latter point, the IJ cited Zelim-Gomez's documentary evidence, which indicated the poor management of diabetes in Mexico was not due to a lack of access to healthcare so much as it was attributable to patients failing to modify their lifestyles through diet and exercise.

On appeal to the BIA, Zelim-Gomez disputed the IJ's conclusion that he failed to show his wife faced exceptional and extremely unusual hardship. He insisted the evidence satisfied the hardship standard and the IJ failed to consider hardship in the aggregate. He also challenged the IJ's admission of the I-9 Form to sustain the second charge of removal, arguing it was part of the separate bond hearing, he had no opportunity to object to it, and it was not authenticated. He asserted these circumstances evinced the IJ's bias. Additionally, during the pendency of the appeal, Zelim-Gomez moved to administratively close his case so he could apply for a provisional waiver of his unlawful presence and adjust his status through his wife.

The BIA denied administrative closure and dismissed the appeal. The BIA ruled that administrative closure was unwarranted because a provisional unlawful-presence waiver would not affect the second ground of removal based on Zelim-Gomez's false representation that he was a United States citizen. In connection with the administrative closure issue, the BIA addressed Zelim-Gomez's challenge to the admissibility of the I-9 Form, ruling it was admissible, he had an opportunity to object to it, and he signed it, falsely representing that he was a U.S.

4

citizen. As for cancellation of removal, the BIA recounted the evidence and agreed

with the IJ that it failed to show his wife would suffer exceptional and extremely

unusual hardship. The BIA rejected Zelim-Gomez's argument that the IJ was biased,

explaining the IJ merely made routine statements in the course of considering his

claim.

II

"We review the BIA's legal determinations *de novo*, and its findings of fact

for substantial evidence." *Aguayo v. Garland*, 78 F.4th 1210, 1216 (10th Cir. 2023).

"Where, as here, a single member of the BIA affirms an IJ decision, we review the

BIA's opinion, but we are not precluded from consulting the IJ's more complete

explanation of those same grounds." *Id.* (internal quotation marks omitted).

*A. Cancellation of Removal*

An alien seeking cancellation of removal must establish his eligibility for

relief by showing, among other things, that his removal would result in exceptional

and extremely unusual hardship to a qualifying relative. 8 U.S.C. § 1229b(b)(1)(D).

"[A]pplication of the exceptional and extremely unusual hardship standard to a given

set of facts is reviewable as a question of law under § 1252(a)(2)(D)." *Wilkinson v.*

*Garland*, 601 U.S. 209, 217 (2024). "[W]e apply a deferential standard to review the

BIA's hardship determination." *Martinez v. Garland*, 98 F.4th 1018, 1021 (10th Cir.

2024). "To meet this standard, a noncitizen must demonstrate that a qualifying

relative would suffer hardship that is substantially different from or beyond that

which would ordinarily be expected to result from their removal, but need not show

5

that such hardship would be unconscionable." *Wilkinson*, 601 U.S. at 215 (internal quotation marks omitted). The analysis should consider all hardship factors in the aggregate, including the age and health of the qualifying family relative. *Id.*

We perceive no error in BIA's determination that Zelim-Gomez failed to satisfy the standard for exceptional and extremely unusual hardship. Although he contends the BIA failed to consider certain evidence, the record refutes his contention. Indeed, he contends the BIA failed to consider his wife has Type 1 diabetes, but the BIA recognized she has suffered from Type 1 diabetes since she was 13. *See* Admin. R. at 5. The BIA also recognized she uses an insulin pump, suffered a miscarriage, and experienced hemorrhaging in her eye. *See id.* Further, rather than ignoring that his wife "is educated on managing her diabetes," as Zelim-Gomez suggests, Pet'r Br. at 6, the BIA observed that she "understands the importance of maintaining a healthy diet and exercising," which distinguishes her from others in Mexico who do not modify their lifestyles, Admin. R. at 5. He also suggests the agency failed to consider that he provides for his wife's health insurance, but the IJ plainly acknowledged he provides her health insurance. *Id.* at 135.

To the extent Zelim-Gomez argues the BIA failed to consider the Mexican healthcare system "is not equipped to handle diseases or medical conditions associated with diabetes," Pet'r Br. at 6, the IJ did not make that finding. Rather, as the BIA observed, the IJ "noted evidence indicating a strong response from Mexican authorities to address the diabetes problem" and "approximately 95% of diabetes patients receive treatment for their disease." Admin. R. at 5 (citing *id.* at 517); *see*

6

*also id.* at 136 (IJ discussing the evidence).  If Zelim-Gomez means to challenge these factual findings, doing so is beyond the scope of our review.  *See Wilkinson*, 601 U.S. at 225 ("The facts underlying any determination on cancellation of removal . . . remain unreviewable."); *Martinez*, 98 F.4th at 1021 n.2 ("We still lack jurisdiction to review agency factfinding.").

Zelim-Gomez also challenges his own documentary evidence, complaining that the diabetes-related articles in the record were old and the patients studied in those articles were in denial about their medical conditions.  However, it was his burden to establish his eligibility for relief.  *See Lucio-Rayos v. Sessions*, 875 F.3d 573, 581 (10th Cir. 2017) ("'An alien applying for relief or protection from removal has the burden of proof to establish that [he] satisfies the applicable eligibility requirements." (quoting 8 U.S.C. § 1229a(c)(4)(A)(i)) (ellipsis omitted)).  Thus, if Zelim-Gomez wished to have more recent or more supportive documentary evidence in the record, it was his obligation to provide it.  Based on the evidence he provided, the BIA did not err in concluding he failed to show his wife would suffer exceptional and extremely unusual hardship in the aggregate.

### B.  Administrative Closure

Zelim-Gomez next contends the BIA should have granted his motion for administrative closure.  "Administrative closure is a docket management tool that is used to temporarily pause removal proceedings."  *Matter of Cruz-Valdez*, 28 I. & N. Dec. 326, 326 (A.G. 2021) (internal quotation marks omitted).  We review the denial of a motion for administrative closure for abuse of discretion.  *Alkotof v. U.S. Att'y*

7

*Gen.*, Nos. 22-10863, 22-10872, ___ F.4th __, 2024 WL 3384938, at *5 (11th Cir. 2024).  "The BIA abuses its discretion when its decision provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Estrada-Cardona v. Garland*, 44 F.4th 1275, 1282 (10th Cir. 2022) (internal quotation marks omitted).

There was no abuse of discretion here.  The agency considers several factors when deciding whether to grant administrative closure, including the reason it is sought and the likelihood the alien will succeed on an application or other action outside of removal proceedings.  *See Matter of Avetisyan*, 25 I. & N. Dec. 688, 696 (BIA 2012); *see also Matter of Cruz-Valdez*, 28 I. & N. Dec. at 329 (reinstating administrative closure under the standards set forth in *Avetisyan*).  Zelim-Gomez sought to administratively close his case so he could pursue a provisional unlawful-presence waiver.  *See* 8 C.F.R. § 212.7(e)(4)(iii) (foreclosing eligibility for waiver unless removal proceedings are administratively closed).  But considering the above factors, the BIA determined administrative closure was unwarranted because even if it closed the case, and even if Zelim-Gomez obtained an unlawful-presence waiver, he would still be subject to the second charge of removal for having misrepresented that he was a U.S. citizen.  Zelim-Gomez does not directly dispute this rationale.

Instead, he argues the IJ erred in admitting the I-9 Form, apparently because it provided the evidentiary basis for his second charge of removal—the false representation charge—which was the reason the BIA denied administrative closure.

8

The BIA addressed this argument as relevant to administrative closure and concluded the I-9 Form was properly admitted.  "The test for admissibility of evidence in a [removal] hearing is whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due process of law."  *Bauge v. INS*, 7 F.3d 1540, 1543 (10th Cir. 1993) (internal quotation marks omitted).

We conclude the I-9 Form was probative and its use was fundamentally fair. The government charged Zelim-Gomez with falsely representing himself as a U.S. citizen to obtain a benefit under the INA.  After discussing the evidence, including the fake social security card and the I-9 Form, the IJ asked counsel if they had "anything further to address."  Admin. R. at 173.  Zelim-Gomez's attorney did not object.[1]  Thereafter, Zelim-Gomez testified that he filled out the I-9 Form and signed it, though he did not remember checking a box attesting under penalty of perjury that he was a U.S. citizen.  *Id.* at 184-86, 205; *see also id.* at 1050 (I-9 Form bearing Zelim-Gomez's signature).  Nonetheless, he admitted to signing the form, and "an alien who represents himself as a citizen on a Form I-9 to secure employment with a private employer has falsely represented himself for a purpose or benefit under the [INA]," *Matter of Bett*, 26 I. & N. Dec. 437, 440 (BIA 2014).  Thus, the I-9 Form was properly admitted because it was probative of the false-representation charge,

---

[1] Zelim-Gomez argues for the first time that his attorney was ineffective. Because he did not exhaust this issue, however, we have no jurisdiction to consider it.  *See Rivera-Zurita* v. INS, 946 F.2d 118, 120 n.2 (10th Cir. 1991) ("The failure to raise an issue on appeal to the Board constitutes failure to exhaust administrative remedies with respect to that question and deprives the Court of Appeals of jurisdiction to hear the matter.").

which the BIA cited as the reason for denying administrative closure. Given this explanation, the BIA did not abuse its discretion in denying the motion for administrative closure.

III

The petition for review is denied.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge